# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

John L. Treischel,                                    Civ. No. 11-242 (JJK)

       Plaintiff,

v.

Michael J. Astrue,                                    **MEMORANDUM**
Commissioner of Social                        **OPINION AND ORDER**
Security,

       Defendant.

---

Robert O. Blatti, Esq., Lakes Area Law Center, counsel for Plaintiff.

David W. Fuller, Esq., and Lonnie F. Bryan, Esq., Assistant United States
Attorneys, counsel for Defendant.

---

JEFFREY J. KEYES, United States Magistrate Judge

      Pursuant to 42 U.S.C. § 405(g), Plaintiff John Treischel seeks judicial

review of the final decision of the Commissioner of Social Security ("the

Commissioner"), who denied Plaintiff's application for disability-insurance

benefits.  This matter is before the Court on the parties' cross-motions for

summary judgment.  (Doc. Nos. 9, 15.)  The parties have consented to the

Court's exercise of jurisdiction over all proceedings in this case pursuant to 28

U.S.C. § 636(c), and Federal Rule of Civil Procedure 73.  (Doc. Nos. 7, 8.)  For

the reasons stated below, the Court denies Plaintiff's motion and grants

Defendant's motion.

**BACKGROUND**

**I.    Procedural History**

Plaintiff protectively filed an application for disability-insurance benefits on April 9, 2007, alleging a disability onset date of May 19, 2006.  (Tr. 130.)  The application was denied initially as well as on reconsideration.  (Tr. 98–103, 105–08.)  Plaintiff timely requested a hearing, which was held before an Administrative Law Judge ("ALJ") on October 7, 2009, and for which Plaintiff was represented by his present counsel.  (Tr. 109–10, 113–14.)  On November 4, 2009, the ALJ issued an unfavorable decision.  (Tr. 13–32.)  Plaintiff sought review of the ALJ's decision, but the Appeals Council denied the request for review on December 9, 2010.  (Tr. 1–5.)  The ALJ's decision therefore became the final decision of the Commissioner.  *See* 20 C.F.R. § 404.981.

On February 1, 2011, Plaintiff filed the instant action with the Court seeking judicial review pursuant to 42 U.S.C. § 405(g).  (Doc. No. 1.)  The parties thereafter filed cross-motions for summary judgment.  *See* D. Minn. Loc. R. 7.2.

**II.    Factual Background**

Plaintiff was born on June 24, 1963.  (Tr. 130.)  At the time of his alleged onset of disability, Plaintiff was 42 years old.  Plaintiff is a high school graduate with no other education and has past relevant work experience as a press operator in plastics production, a supervisor at a metal factory, and a "filler operator" for SunOpta, Inc., a natural and organic foods distributor, where

2

Plaintiff has spent the largest and most recent portion of his time primarily overseeing machines that fill cartons and bottles with soy milk.  (Tr. 43, 49.)

According to Plaintiff, he stopped working on May 19, 2006, because of back pain, knee pain, addiction to pain killers, and anxiety and depression. (Tr. 162.)  Plaintiff stated that his back, which has been "bad   . . . for 23 years," is "bad enough" that he does not know, from day to day, if he will "be able to walk"; he also cannot "bend, twist, lift, pivot, or kneel without pain."  (*Id.*) Additionally, Plaintiff stated that he cannot sit or stand for any length of time without pain.  (*Id.*)

Plaintiff's appeal focuses on the particular residual functional capacity ("RFC") testing underwent by Plaintiff, the resultant RFC report, and that particular report's interpretation by both the ALJ and the vocational expert ("VE") at the October 7, 2009, hearing.  The relevant facts as to those issues are as follows.

### A.   RFC Testing and Report

On November 27 and December 6 and 7, 2007, Plaintiff was tested by Northwest Industrial Rehabilitation Services, Inc. ("NWIRS") to "[d]etermine physical abilities" and "[d]etermine general abilities for vocational placement." (Tr. 383.)  The NWIRS testing performed was called the "Two-Day WorkWell FCE," FCE meaning "functional capacity evaluation."  (*Id.*)  Instead of the testing taking place on two consecutive days, as was customary, Plaintiff canceled and

rescheduled the second day twice due to aggravated low back pain, ultimately

completing the testing on December 6 and 7.  (*Id.*)[1]

Karen Hardine, a registered and licensed occupational therapist, produced

a "Summary Report" of Plaintiff's NWIRS testing dated December 7, 2007.

Plaintiff's limitations are described in the Summary Report as follows:

1. Decreased trunk strength and endurance for standing
2. Decreased walking tolerance
3. Low tolerance for reaching
4. Low weight handling abilities
5. Unable to bend
6. Unable to squat, crouch, or lift below waist level
7. Decreased pacing skills with a slow-moderate work pace

(Tr. 384.)

Attached to this Summary Report is a form, filled out by Hardine in her own

handwriting, titled "Functional Capacities."  (Tr. 390–91.)  The Summary Report

states that Plaintiff "is feasible for employment at the levels indicated on the

attached FCE form," which the Court interprets as referencing the Functional

Capacities attachment.[2]  (Tr. 384.)

---

[1]     Two other RFC assessments had also been conducted prior to the time of
the NWIRS assessment: (1) a physical RFC assessment by Dr. James
Stevenson on September 9, 2007, reviewed by Dr. Nancy Armstrong on March
12, 2008; and (2) a mental RFC assessment by Dr. Thomas L. Kuhlman on
September 20, 2007, reviewed by Dr. W. Miller Logan on March 21, 2008.
(Tr. 338–45, 367–70, 406–07, 411–12.)  Neither of these RFC assessments, nor
their respective reviews, are at issue in the present case.

[2]     There is also an attached form titled "Test Results and Interpretation,"
which essentially mirrors the findings reported in the Functional Capacities
attachment.  (Tr. 385–86.)

On the Functional Capacities attachment, Hardine indicates that Plaintiff was "[n]ot at all" able to bend, stoop, squat, or crouch.  (Tr. 390.)  Hardine also indicates that Plaintiff was (1) unable to carry twenty-five or more pounds over a distance, (2) unable to lift twenty-five or more pounds at waist level, (3) unable to lift eleven or more pounds at shoulder level, and (4) unable to lift any weight "to and from the floor."  (Tr. 390–91.)  As to both carrying over a distance and lifting at waist level, Hardine indicates that Plaintiff was able to manage fifteen pounds "[r]arely" and five pounds "[o]ccasionally."[3]  (*Id.*)  And Plaintiff was able to occasionally reach above shoulder level and, as to lifting at shoulder level, Plaintiff was able to lift ten pounds rarely.  (Tr. 391.)  In addition, Hardine reports that in an eight-hour workday, Plaintiff can (a) sit for five to six hours in twenty minute intervals, (b) stand for one hour in five to seven minute intervals, and (c) walk for four hours in five to six minute intervals, as long as the walking is "self-paced."  (Tr. 390.)

Plaintiff does not dispute that Hardine's findings and conclusions in the NWIRS Summary Report and Functional Capacities attachment (hereinafter, collectively, the "NWIRS report") are consistent with the record as a whole and are an accurate reflection of Plaintiff's RFC.  (Doc. No. 10, Pl.'s Mem. 3.)  In fact, Plaintiff points out that his primary physician Dr. Scott Hegstad had reviewed the

---

[3]     "In terms of an 8 hour workday, 'Rarely' equals 1-5%, [and] 'Occasionally' 6% to 33%[.]  (Tr. 390.)

NWIRS report in June 2008 and believed it to be "a very fair and accurate representation of [Plaintiff's] status."  (*Id.* at 14; Tr. 413.)

## B.    The Administrative Hearing

Plaintiff, Plaintiff's present counsel, the ALJ, and William D. Tucker, the VE, were in attendance at the October 7, 2009 administrative hearing.  (Tr. 40.) The relevant testimony from this hearing is presented below.

### Plaintiff's Testimony

Plaintiff testified that he believed he was unable to work "[b]ecause of severe pain in [his] low back and . . . arthritis in [his] neck, [inability] to concentrate on anything for any length of time, depression and anxiety and panic attacks."  (Tr. 45.)  Plaintiff also testified that his last job (a filler operator for SunOpta) required "[l]ots of bending, kneeling, twisting, [and] lifting."  (Tr. 49.) According to Plaintiff, his low back pain prevented him from "keep[ing] up" his attendance because he "could no longer do [his] job"; indeed, Plaintiff was fired from SunOpta for excessive absenteeism.  (Tr. 51–52, 73–74.)

In addition, Plaintiff testified that his doctors, including Dr. Hegstad, placed limits on what he could do, including prohibiting "bending, kneeling, squatting, twisting, pivoting, [and] lifting."  (Tr. 65.)  Plaintiff stated that he could sit for fifteen minutes at a time before having to get up, and that he could not stand stationary in one place.  (*Id.*)  Plaintiff stated that he could walk around for fifteen minutes.  (*Id.*)  Later, Plaintiff stated that he could walk a city block at most and that, if he walked further, his knees would begin to hurt and the pain would

radiate into his lower back.  (Tr. 77.)  Plaintiff also testified that it hurts to pick up

anything off the floor but that he could lift five pounds off of a tabletop and that he

could carry five pounds.  (Tr. 65.)

As to his pain, Plaintiff located it in his lower and middle back, neck, both

legs, and both knees, with the pain in his back being the worst, "[c]onstantly six"

on a pain scale of one to ten.  (Tr. 65–66.)  Plaintiff stated that he has had

problems with his lower back since 1986, when he injured his back at work while

lifting a door.  (Tr. 73.)  Plaintiff also testified as to another back injury at work in

2004.  (Tr. 46–47.)  As to Plaintiff's knee pain, Plaintiff stated that he had injured

his right knee at work in 2005 and that it had been operated on, and that his left

knee "cracks really bad all the time" and is "hard to straighten."  (Tr. 46, 76–77.)

In addition, Plaintiff testified that since undergoing the NWIRS RFC testing his

back pain had worsened.  (Tr. 70.)

### The Hypothetical Questions Posed to the VE

In all, the ALJ asked the VE four hypothetical questions, only the third of

which is significant in this appeal.  The first hypothetical dealt with whether

Plaintiff could perform any of his past relevant work (all of which was classified by

the ALJ as "medium to heavy"), to which the VE answered no.  (Tr. 81–82.)

The second hypothetical involved the physical RFC assessment conducted

on September 5, 2007 (not the RFC testing done by NWIRS), which the ALJ

interpreted as limiting Plaintiff to "the full range of light work as that term is

defined in the secretary's regulations," and whether, assuming this light RFC,

there were jobs for Plaintiff that fit within those parameters, to which the VE

answered yes.[4]  (Tr. 81–82, 339.)  The VE provided examples for both "light" jobs

("assembler of small products" and "marker or labeler") and "sedentary" jobs

("electronics worker").  (Tr. 82–83.)  For each representative job, there was

availability in the five-state region of North Dakota, South Dakota, Minnesota,

Iowa, and Nebraska.  (Tr. 81–83.)

The third hypothetical presented by the ALJ to the VE, central to this

dispute, is reproduced here:

> Q     For a third hypothetical, it'd be the same as hypothetical two, .
> . . but for physical limitations, I want to assume those in that FCE at
> [exhibit] 15F, page 2, the one that was done November and
> December of 2007.  Did you have a chance to look through that?
>
> A     Yes, I believe I did.  Let me—that's the Northwestern [sic]
> Industrial Rehabilitation.
>
> Q     Yes.
>
> A     Yes, I have looked at that.
>
> Q     Would that hypothetical allow the same light and sedentary
> jobs [as offered for hypothetical two]?
>
> A     It would allow the light and sedentary jobs.  I'm looking at
> page 3, the paragraph[5] where the therapist's recommendation

---

[4]     There were other assumptions made by the VE beyond Plaintiff's physical
RFC.  For instance, the ALJ also asked the VE to assume all the impairments
that Plaintiff had described in his testimony, as well as the mental limitations set
forth in the September 20, 2007, mental RFC assessment.  (Tr. 81–82.)  These
assumptions, though, are not in dispute.

[5]     This paragraph, titled "Therapist's Recommendations Regarding Return to
Work," specifically states as follows:

(Footnote Continued on Next Page)

regarding return to work and he's allowed him to work at the light work range with the frequent changes in position necessary and those should be able to be accommodated within the light and sedentary jobs that I recited.

(Tr. 83–84.)  The fourth and final hypothetical substituted a July 25, 2008 "Independent Medical Evaluation" for the NWIRS report, and the VE's answer regarding job availability remained the same.  (Tr. 84, 428.)  The VE stated that the jobs given as examples—assembler of small products, marker or labeler, and electronics worker—"would not involve repetitive bending from the waist." (Tr. 84.)

The VE then testified that he was not aware of any discrepancies between his testimony and the Dictionary of Occupational Titles ("DOT"), and that he did not observe any other vocationally relevant factors that were not sufficiently discussed at the hearing.  (*Id.*)

**Plaintiff's Cross-Examination of the VE**

On cross-examination by Plaintiff, the VE testified that his answer to the third hypothetical question was based on Hardine's statement in the NWIRS

---

(Footnote Continued from Previous Page)

Client's functional abilities allow him to work in a light work level with frequent position changes necessary.  Client's trunk, hip, and bilateral leg weakness associated with his low back injury are his main limitations related to function.  His functional limitations associated with his right knee were related to prolonged sitting, walking, climbing, kneeling, and squatting.

(Tr. 384.)

Summary Report that Plaintiff could do "light work." (Tr. 86.) The VE stated that he "didn't go to a complete analysis of her on this," but stated that while Hardine's statement did not take into account any of the specific physical limitations that she imposed in the Functional Capacities attachment, "in order for [Hardine] to arrive at a light classification, she would have necessarily taken into consideration the limitations relative to standing and sitting as well as lifting." (*Id.*) Therefore the VE, in answering the third hypothetical, had only "responded to [Hardine's] summary of [Plaintiff's] ability to do light work." (Tr. 86.)

Plaintiff then examined the VE with respect to the Functional Capacities attachment. When asked whether Plaintiff's "sit, stand, [and] walk" limitations fell within the light classification, the VE testified that they would instead fall within the sedentary classification. (Tr. 89.) With respect to Plaintiff's "lifting" limitations, the VE testified that "that limitation is *less than the full range* of sedentary work." (Tr. 90 (emphasis added).) With respect to Plaintiff's inability to bend, stoop, squat, and crouch, the VE testified that those limitations would not further restrict the range of available sedentary work, because "bending, squatting and crouching are typically not activities expected of a person doing sedentary work." (*Id.*)

Lastly, the VE testified that the specific limitations that Hardine listed on the Functional Capacities attachment do not equate with light work. (Tr. 91.) But he conceded that he based his answer to the third hypothetical assuming Plaintiff's RFC to be at the light work level. (Tr. 90–91.)

10

**ALJ's Follow-Up Hypothetical Question to the VE**

After Plaintiff's cross-examination, the ALJ asked the VE whether the sedentary job he had offered in response to hypotheticals two, three, and four—the electronics worker position—would still fall within the third hypothetical despite the limitations brought to light by Plaintiff on cross-examination. The VE responded yes. (Tr. 91.) He explained that the light jobs he had offered in response to hypotheticals two, three, and four—the assembler of small products and the marker or labeler positions—would in fact not fall within the third hypothetical. (*Id.*) And he offered another sedentary job, available in Plaintiff's geographic area, as an example—the "optical goods worker" position that would fit the hypothetical. (*Id.*) The VE then again testified that he was not aware of any discrepancies between his testimony and DOT, and that he did not observe any other vocationally relevant factors that were not sufficiently discussed at the hearing. (Tr. 91–92.)

### C.    The ALJ's Decision

Much of the ALJ's decision is undisputed, and therefore only the relevant portions are highlighted here.

The ALJ ultimately found that Plaintiff had the RFC "to perform a range of unskilled sedentary work," but that Plaintiff "should never bend, stoop, or squat." (Tr. 26.) In determining Plaintiff's RFC, the ALJ did not at all consider the September 5, 2007 RFC assessment that "concluded that claimant could perform essentially a full range of light exertional work activity," because "after carefully

considering the record in its entirety, [the ALJ was] satisfied that claimant's musculoskeletal impairments render[ed] him *more significantly limited*."  (Tr. 30 (emphasis added).)  Instead, the ALJ specifically adopted the NWIRS report as Plaintiff's physical RFC.  (*Id.*)

The ALJ then went on to determine, given Plaintiff's RFC, whether there were jobs existing in significant numbers in the national economy that Plaintiff could perform.  (Tr. 31.)  The ALJ found that Plaintiff's "ability to perform all or substantially all of the requirements of [sedentary work] ha[d] been impeded by additional limitations," and he described the VE's testimony regarding that subject as follows:

> To determine the extent to which these limitations erode the unskilled sedimentary occupational base, the [ALJ] asked the [VE] whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and [RFC].  The [VE] testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as electronics worker (DOT 826.685-066) and optical goods worker (DOT 713.687-018) positions.

(Tr. 31–32.)  The ALJ then concluded:

> Based on the testimony of the [VE], the undersigned concludes that, considering the claimant's age, education, work experience, and [RFC], the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  A finding of "not disabled" is therefore appropriate . . . .

> The undersigned, at this juncture, notes that the ability to stoop occasionally is required in most unskilled sedentary occupations and a complete ability to stoop would significantly erode the unskilled sedentary occupational base (Social Security Ruling 96-9p); *nevertheless, the inability to stoop does not completely*

12

*erode the sedentary occupational base and jobs cited by the*
*vocational expert do not require stooping.*

(Tr. 32 (emphasis added).)

## DISCUSSION

### I.    Standard of Review

Congress has prescribed the standards by which Social Security disability

benefits may be awarded.  "Disability" under the Social Security Act means the

"inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of

not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "An individual shall be

determined to be under a disability only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy."

42 U.S.C. § 423(d)(2)(A).

Review by the Court of the Commissioner's decision to deny disability

benefits to a claimant is limited to a determination of whether the decision of the

Commissioner is supported by substantial evidence on the record as a whole.  42

U.S.C. § 405(g); *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006).  "There is

a notable difference between 'substantial evidence' and 'substantial evidence on

the record as whole.'"  *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)

(quotation omitted).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotations omitted); *see also Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001) (quoting *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998)). "'Substantial evidence on the record as a whole,' . . . requires a more scrutinizing analysis."  *Gavin*, 811 F.2d at 1199.  "The substantial evidence test employed in reviewing administrative findings is more than a mere search of the record for evidence supporting the [Commissioner's] findings."  *Id.*  In reviewing the administrative decision, "'[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight.'"  *Id.* (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

In reviewing the record for substantial evidence, the Court may not substitute its own opinion for that of the ALJ.  *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).  The Court may not reverse the Commissioner's decision merely because evidence may exist to support the opposite conclusion.  *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994); *see also Woolf*, 3 F.3d at 1213 (concluding that the ALJ's determination must be affirmed, even if substantial evidence would support the opposite finding).  The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence.  *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

14

The claimant bears the burden of proving his or her entitlement to disability-insurance benefits under the Social Security Act. *See* 20 C.F.R. § 404.1512(a); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991). Once the claimant has demonstrated that he or she cannot perform past work due to a disability, "the burden shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000).

## II.    Analysis of the ALJ's Decision

Plaintiff alleges two errors in the ALJ's evaluation of his disability claim. First, Plaintiff alleges that the ALJ posed a deficient hypothetical question to the VE that effectively tainted the entirety of the VE's testimony regarding whether Plaintiff could perform any other gainful and substantial work within the economy. Second, Plaintiff alleges that the VE's testimony and, at least to some extent, the ALJ's decision are inconsistent with Social Security Ruling 96-9p and the DOT. According to Plaintiff, these errors prevent the VE's testimony from being the substantial record evidence needed to support the ALJ's finding of "not disabled." The Court discusses each alleged error in turn.

### A.    Deficient Hypothetical Question

An ALJ may use a VE's testimony at "step five" of the sequential evaluation process in a disability case to help determine, on the basis of the

claimant's age, education, work experience, and RFC, whether the applicant can

perform any other gainful and substantial work within the economy.  20 C.F.R.

§§ 404.1520(g), 404.1566(e).[6]  Testimony from a VE in response to an ALJ's

properly phrased hypothetical question constitutes substantial evidence

satisfying this fifth step.  *Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001).

A properly phrased hypothetical question is one in which the ALJ precisely sets

forth the claimant's particular physical and mental impairments, so long as such

impairments are both supported by substantial evidence and found credible by

the ALJ.  *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005); *Streissel

v. Schweiker*, 717 F.2d 1231, 1232 (8th Cir. 1983); *Tennant v. Schweiker*, 682

F.2d 707, 711 (8th Cir. 1982).

Plaintiff argues that the ALJ's third hypothetical to the VE did not precisely

set forth his particular physical impairments.  The discrepancy raised is whether

the NWIRS report, which report's limitations were assumed for purposes of the

third hypothetical, classified Plaintiff's RFC as "light" or "sedentary."  The

Summary Report states that Plaintiff's "functional abilities allow him to work in a

light work level."  (Tr. 384.)  But Plaintiff points out that the attached Functional

Capacities form, referenced in the Summary Report, in reality limits Plaintiff to a

---

[6]     The first four evaluative steps, none of which are at issue in the present
case, are as follows: (1) whether the applicant is currently working; (2) whether
the claimed impairment is severe; (3) whether the impairment meets or equals
the regulatory listings; and (4) whether the applicant has the RFC to perform his
or her past work.  *Id.* § 414.1520(a)(4).

sedentary work level, not a light work level.  The Court agrees with Plaintiff's

interpretation of the NWIRS report as a whole.

The Medical-Vocational Guidelines define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with
> frequent lifting or carrying of objects weighing up to 10 pounds.
> Even though the weight lifted may be very little, a job is in this
> category when it requires a good deal of walking or standing, or
> when it involves sitting most of the time with some pushing and
> pulling of arm or leg controls.  To be considered capable of
> performing a full or wide range of light work, you must have the
> ability to do substantially all of these activities.  If someone can do
> light work, we determine that he or she can also do sedentary work,
> unless there are additional limiting factors such as loss of fine
> dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).  Similarly, the DOT defines light work as follows:

> Exerting up to 20 pounds of force occasionally (Occasionally: activity
> or condition exists up to 1/3 of the time) and/or up to 10 pounds of
> force frequently (Frequently: activity or condition exists from 1/3 to
> 2/3 of the time) and/or a negligible amount of force constantly
> (Constantly: activity or condition exists 2/3 or more of the time) to
> move objects.  Physical demand requirements are in excess of those
> for Sedentary Work.  Even though the weight lifted may be only a
> negligible amount, a job should be rated Light Work: (1) when it
> requires walking or standing to a significant degree; or (2) when it
> requires sitting most of the time but entails pushing and/or pulling of
> arm or leg controls; and/or (3) when the job requires working at a
> production rate pace entailing the constant pushing and/or pulling of
> materials even though the weight of those materials is negligible.

*E.g.*, DOT 739.687-030, 1991 WL 680180.

The NWIRS Functional Capacities attachment indicates that Plaintiff's

carrying limit is fifteen pounds rarely and five pounds occasionally.  It also

indicates that Plaintiff's lifting limits are fifteen pounds to the waist rarely, five

pounds to the waist occasionally, ten pounds to the shoulder rarely, and no

weight from the floor.  These specific limitations fall below the "occasional" twenty

pounds of force and "frequent" ten pounds of force required for light work.

Furthermore, light work requires walking and standing to a significant degree,

and Plaintiff can only walk four hours a day in five to six minute intervals and

stand one hour a day in five to seven minute intervals.  Thus the Court agrees

with Plaintiff that the NWIRS report cannot be interpreted, on the whole, as

concluding that Plaintiff can work "in a light work level," even though that is what

the Summary Report states in one—albeit conspicuous—place.[7]

Therefore, the ALJ's initial version of the third hypothetical, which required

the VE to assume the impairments in the NWIRS report and in response to which

the VE (incorrectly) assumed a light classification, did not precisely set forth

Plaintiff's less-than-sedentary impairments.  Had the issue gone unchallenged, it

would likely have been error.  *Cf. Distasio v. Shalala*, 47 F.3d 348, 349–50 (9th

Cir. 1995) (finding error where VE testified plaintiff could only perform sedentary

jobs, ALJ accepted such classification "without qualification," but ALJ went on to

find, without other evidence, that claimant could perform light work).

But this third hypothetical did not fade so quickly into the night; fortunately,

Plaintiff raised the issue later in the hearing, during his cross-examination of the

VE.  The VE admitted that the NWIRS report, especially the Functional

---

[7]    It is indeed mysterious why Hardine recommended a "light work level" in
the Summary Report when the balance of the NWIRS report instead advances a
sedentary classification.

Capacities attachment, actually laid out an RFC that would limit Plaintiff to "less than the full range of sedentary work."  And the ALJ followed up Plaintiff's cross-examination with a "revised" version of hypothetical three, taking into account Plaintiff's points regarding what the NWIRS report really meant, and the VE accordingly changed his answer by eliminating any light jobs and proffering yet another sedentary job.  Plaintiff now essentially argues that the VE's earlier mistake, interpreting the NWIRS report as light instead of sedentary, vitiates the entirety of the VE's testimony, including that later portion in response to the ALJ's "revised" version of hypothetical three.  The Court disagrees.

The "revised" version of hypothetical three precisely set forth Plaintiff's physical impairments in accordance with the law.  Vocational experts are entitled to change their minds throughout a hearing, as are ALJs, and nothing more than this happened here.  In this respect, this case is similar to *Diaz v. Secretary of Health and Human Services*, where the Tenth Circuit wrote:

> Initially, we note that the vocational expert revised her opinion of [claimant's] functional capacity after listening to the hearing testimony, finding that [claimant] was at most capable of sedentary, rather than medium or light work.  This change in the vocational expert's testimony suggests that the expert was cognizant of [claimant's] other impairments and that she was making an individualized assessment.  The fact the vocational expert was present and heard testimony concerning [claimant's] alleged impairments suggests that the effect of the error, if any, in the [ALJ's] hypothetical, was minimal.

898 F.2d 774, 777, 778 (10th Cir. 1990) (affirming the ALJ); *see also Brenner v. Schweiker*, 711 F.2d 96, 99 (8th Cir. 1983) (noting that the underlying purpose of

the vocational expert hypothetical-question rules is to assure that a vocational
expert can "realistically assess the availability of jobs" for the individual claimant).
In this case, looking at how the hearing progressed and the evidence as a whole,
the effect of the likely error in the first version of hypothetical three on the VE's
later testimony was, if anything, minimal.

Moreover, the earlier testimony certainly does not render discredited all of
the VE's subsequent testimony.  *Cf. Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.
Appx. 515, 524 (6th Cir. 2003) ("That a hypothetical question must incorporate all
of the claimant's . . . limitations does not divest the ALJ of his or her obligation to
assess credibility and determine the facts."); *Gay v. Sullivan*, 986 F.2d 1336,
1341 (10th Cir. 1993) (noting that a vocational expert's assuming "unestablished,
conclusive facts," and analyzing thereon, results in "essentially tautological"
testimony that "clearly would not bind the ALJ").  The ALJ generally remains free
to credit some testimony and discredit other testimony, even from the same
witness at the same hearing and even if that witness is an expert.  *See Lindstrom
v. Sullivan*, No. Civ 3-89-5, 1990 WL 357282, at *2 (D. Minn. Feb. 16, 1990)
(affirming the ALJ stating that "some expert testimony support[ed] the ALJ's
decision"); *but see Switzer v. Heckler*, 742 F.2d 382, 385–86 (7th Cir. 1984)
(stating that when the report was uncontradicted, "the Secretary's attempt to use
only the portions favorable to her position, while ignoring other parts, is
improper").  As the ALJ made clear in his decision, evidence classifying Plaintiff
at the light level was discredited while evidence classifying Plaintiff at the

sedentary level, or even a limited sedentary range, was credited.[8]  The ALJ, then, was free to effectively ignore the VE's answer to the first version of hypothetical three and to only take into account the VE's answer to the "revised" version of hypothetical three.  The Court points out that the ALJ only included in his decision the two sedentary jobs offered by the VE in response to the "revised" hypothetical, not the lone sedentary job offered by the VE in response to the first version of hypothetical three.  That the ALJ based his "step five" finding on "the testimony of the [VE]" does not mean that the ALJ relied on the VE's testimony in its entirety, nor does it mean that, if later testimony was inconsistent with earlier testimony, the entirety must be discredited.

In sum, a likely deficient hypothetical question was saved by a subsequent sufficient hypothetical question, and it was this "revised" hypothetical that prompted the testimony that was ultimately used as substantial evidence for the ALJ's decision.  Thus, the VE's testimony, in the end, constitutes substantial evidence that Plaintiff was able to perform other gainful and substantial work within the economy, and the ALJ did not err in relying on it.  *See Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) ("Testimony from a [vocational expert] based on a properly-phrased hypothetical question constitutes substantial evidence.").

---

[8]        This determination, again, is not disputed by Plaintiff.

### B.    Social Security Ruling 96-9p

Plaintiff next argues that, to some extent, both the VE and the ALJ failed to follow Social Security Ruling 96-9p ("SSR 96-9p").  SSR 96-9p deals squarely with "less-than-sedentary" RFCs, like Plaintiff's undisputed RFC in this case. SSR 96-9p, *Determining Capability to Do Other Work—Implications of a Residual Functioning Capacity for Less than a Full Range of Sedentary Work*, 1991 WL 374185 (July 2, 1996).  The Medical-Vocational Guidelines state that there are approximately 200 separate unskilled sedentary occupations, each representing numerous jobs in the national economy.  20 C.F.R. Subpt. 2, Pt. 404, App. 2, § 201.00(a).  While a sedentary classification in itself represents a significantly restricted range of work, this range is not so prohibitively restricted as to negate work capability for substantial gainful activity.  *Id.* § 201.00(b).  While a decision of "disabled" *may* be appropriate for an individual under age 45 who does not have the ability to perform the full range of sedentary work, "the inability to perform a full range of sedentary work *does not necessarily equate* with a finding of 'disabled.'"  *Id.* § 201.00(h)(3) (emphasis added).  SSR 96-9p essentially provides guidance for this sort of line-drawing – i.e., when a claimant's less-than-sedentary impairments so significantly erode possible jobs from the administratively noticed 200, rendering the claimant, for all intents and purposes, disabled.

Plaintiff essentially contends that one portion of the VE's testimony and one portion of the ALJ's decision "reflect[] a lack of knowledge" of SSR 96-9p.

(Doc. No. 10, Pl.'s Mem. 10.)  First, with respect to the VE's testimony, Plaintiff argues that, when asked if a complete inability to stoop would further erode Plaintiff's already limited sedentary base of occupations, the VE was wrong in answering no.  Plaintiff goes on to argue that this error damages the VE's credibility.  The Court disagrees with both of these statements.  It is true that SSR 96-9p states that "[a] complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding of disability would *usually* apply."  It is also true that SSR 96-9p states that occasional stooping "is required in *most* unskilled sedentary occupations."  (Emphases added.)  These excerpts, at first blush, appear to repudiate the VE's answer here.  However, it is also true that 96-9p states—in fact, emphasizes—that "[a]n RFC for less than a full range of sedentary work . . . is expected to be relatively *rare*."  (Emphasis added.)

While Plaintiff argues that the VE answered incorrectly, he does not address the "relative rar[ity]" of his RFC, nor does he acknowledge that the words "usually" and "most" are not conclusively in his favor.[9]  The Court cannot conclude that the VE's answer was incorrect given the "usually" and "most" language.  "Usually" and "most" do not foreclose findings to the contrary.  If they were intended to achieve this result, they would instead read "always" or "all."

---

[9]    Not to belabor the point, but the Court stresses again that Plaintiff does not call into question the ALJ's determination of his RFC or the NWIRS report's findings and conclusions.

Further, in *Lauer v. Apfel*, the Seventh Circuit held that SSR 96-9p "does not compel a finding of disability" in a complete-inability-to-stoop case and remanded the case back to the district court, which was held to have incorrectly found disability, stating that the claimant's case was one in which disability would "usually" apply.  169 F.3d 489, 492 (7th Cir. 1999).  In sum, SSR 96-9p permits the VE, in unusual cases (which this case indisputably is), to answer no when asked if a complete inability to stoop would render Plaintiff further disabled or even fully disabled.  *See id.* at 493 ("Whether a claimant's inability to stoop is a usual or unusual case is a fact-bound determination best made by the Commissioner.").

Second, with respect to the ALJ's decision, Plaintiff argues that the ALJ erred in concluding that "the inability to stoop does not completely erode the sedentary occupational base."  Plaintiff is wrong, for the same reasons given above.  *See also Mullens v. Barnhart*, 165 Fed. Appx. 611, 613 (10th Cir. 2006) (affirming in situation where magistrate judge found that, where a claimant was unable to stoop, a finding of disabled was not required by case law or SSR 96-9p).

Beyond stooping, Plaintiff also argues that the ALJ failed to follow SSR 96-9p's guidelines with respect to Plaintiff's sitting, lifting, and standing limitations. (Doc. No. 10, Pl.'s Mem. 15.)  Plaintiff's arguments appear to go as follows: (1) whereas SSR 96-9p states that the full range of sedentary work "requires that an individual be able to stand and walk for a total of approximately 2 hours,"

Plaintiff's RFC limits his ability to stand to one hour, in five to seven minute

intervals; (2) whereas SSR 96-9p states that the full range of sedentary work

requires that an individual "be able to remain in a seated position for

approximately 6 hours," Plaintiff's RFC limits his ability to sit to five to six hours,

in twenty minute intervals; and (3) whereas SSR 96-9p states that the full range

of sedentary work requires the ability to lift ten pounds and occasionally lift and

carry items "like docket files, ledgers, and small tools throughout the workday,"

Plaintiff's RFC limits his lifting from the floor and lifting and carrying to five

pounds occasionally, ten pounds to shoulder rarely, and fifteen pounds to waist

rarely.  Based on the above, Plaintiff concludes that the ALJ erred by concluding

that Plaintiff's base of sedentary occupation options was not so significantly

eroded as to render Plaintiff disabled.

SSR 96-9p is not so "black and white" as Plaintiff attempts to paint it.  For

instance, SSR 96-9p states the following:

> [T]he mere inability to perform substantially all sedentary unskilled
> occupations does not equate with a finding of disability.  There may
> be a number of occupations from the approximately 200 occupations
> administratively noticed, and jobs that exist in significant numbers,
> that an individual may still be able to perform even with a sedentary
> occupational base that has been eroded.

This describes Plaintiff's case.  The VE proffered two sedentary occupations,

each of which exists in significant numbers, that Plaintiff could still perform even

with his sedentary occupational base somewhat—perhaps even significantly—

eroded by his limitations.  The ALJ then adopted these two sedentary

occupations in its determination as evidence that Plaintiff, howsoever impaired, could still engage in some form of substantial and gainful activity.  *See Jones v. Comm'r of Soc. Sec.*, 23 Fed. Appx. 339, 340 (6th Cir. 2001) (affirming the denial stating, "The ALJ actually gave [claimant] the benefit of the doubt regarding the other . . . limitations, presented those limitations in a hypothetical to the vocational expert, and credited the expert's testimony that found a significant number of sedentary jobs still available . . . even with those limitations").

The Court agrees that, given Plaintiff's limitations, his base of sedentary occupations was to some extent eroded pursuant to SSR 96-9p.  But even in such circumstances, SSR 96-9p permits the ALJ to find Plaintiff to not be disabled.  In sum, there is no inconsistency or legal misunderstanding on the part of either the VE or the ALJ with respect to SSR 96-9p that requires remand or reversal.

### C.   The DOT

Lastly, Plaintiff argues that the VE's testimony was inconsistent with the DOT regarding the two sedentary jobs that the VE proffered as examples.[10] According to Plaintiff, the ALJ's decision was flawed in turn, because the ALJ

---

[10]    Plaintiff also points out that the VE twice testified that he was not aware of any inconsistencies between his testimony and the DOT.  *See* SSR 00-4p, *Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions*, 2000 WL 1898704 (Dec. 4, 2000).  Plaintiff argues that any inconsistencies between the VE's testimony and the DOT seriously damage the VE's credibility because of this SSR 00-4p affirmation.

adopted in its decision these two jobs as substantial evidence that Plaintiff could still perform substantial and gainful work within the economy.  The two jobs at issue are (1) the electronics worker position and (2) the optical goods worker position.

Where the vocational expert's testimony conflicts with the DOT, the DOT controls.  *Smith v. Shalala*, 46 F.3d 45, 47 (8th Cir. 1995); *see also McCoy v. Schweiker*, 683 F.2d 1138, 1145–46 (8th Cir. 1982) (stating that "in the general run of cases" the DOT is more reliable than a vocational expert).  The DOT defines "sedentary" as follows:

> Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body.  Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time.  Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

DOT 713.687-018, 1991 WL 679271.  Generally speaking, Plaintiff's lifting, carrying, standing, sitting, and walking limitations each fit within the DOT's sedentary framework.  First, as to the occasional 10-pounds-of-force requirement, the Court interprets it as an upper limit, or maximum, as evidenced by the words "up to."  After all, "DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range."  *Page v. Astrue*, 484 F.3d 1040, 1045 (8th Cir. 2007).  "The DOT itself cautions that its descriptions may not coincide in every respect

with the content of jobs as performed in particular establishments or at certain localities." *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) (quoting *Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000), and citing the DOT at xiii).  "In other words, not all of the jobs in every category have requirements identical to or as rigorous as those listed in the DOT."  *Wheeler*, 224 F.3d at 897.  Plaintiff was limited to lifting fifteen pounds to waist rarely, carrying fifteen pounds rarely, lifting ten pounds to shoulders rarely, lifting five pounds to waist occasionally, and carrying five pounds occasionally.  Because Plaintiff can lift and carry five pounds occasionally, he meets the "up to" 10-pounds-of-force requirement under the DOT.  Therefore, it was proper for the VE to proffer sedentary jobs for Plaintiff.

Second, as to the sitting, walking, and standing requirements, Plaintiff's limitations fit squarely with the DOT's definition of sedentary.  Plaintiff can sit most of the time (six out of eight hours) with brief moments of walking or standing (every twenty minutes, Plaintiff can stand for five to seven minutes or walk for five to six minutes).  Thus, the VE's testimony that sedentary jobs fit Plaintiff's case did not contradict the DOT.

Beyond these general requirements, Plaintiff argues that the two specific sedentary jobs offered by the VE are also inconsistent with the DOT because the VE testified that they fit Plaintiff's less-than-sedentary RFC when they purportedly exceed Plaintiff's RFC.  Each job is analyzed below.

**Electronics Worker: DOT 726.685-066**

Plaintiff argues that "[t]he opinion by the VE that the Plaintiff could perform the job of an electronics worker . . . was clearly inconsistent with the DOT" because "it would appear that a great deal of reaching, light lifting, twisting and bending would be involved, which would be further restricted by the Plaintiff's inability to bend, stoop, squat, and crouch, and to reach above shoulder height only occasionally, in addition to the lifting restrictions found in the NWIRS [report]." (Doc. No. 10, Pl.'s Mem. 13.)

The DOT describes the electronics worker job as follows:

> Tends automatic bonding machine that bonds gold or aluminum wire to integrated circuit dies to connect circuitry to package leads. Reviews schematic diagram or work order to determine bonding specifications. Turns dials to set bonding machine temperature controls and to regulate wire feeding mechanism. Mounts spool of wire onto holder and inserts wire end through guides, using tweezers. Positions semiconductor package into magazine of automatic feed mechanism, and observes package, using microscope or equipment display screen, to ensure connections to be bonded are aligned with bonding wire. Adjusts alignment as necessary. Activates machine that automatically bonds wire to specified connections on semiconductor package leads. Removes packages from bonding machine and places packages in work tray. May test tensile strength of bonded connections, using testing equipment. May locate connections and bond wire to connect circuitry of hybrid circuits, using precision-bonding machine.

DOT 726.685-066, 1991 WL 679631.

The Court cannot agree with Plaintiff's conclusory statement that an electronics worker involves a "great deal" of reaching, lifting, twisting, and bending. A fair reading of this DOT description belies such a contention. With

respect to Plaintiff's reaching limitations, the DOT states that reaching is "occasionally" required for the electronics worker job, which is the same as Plaintiff's limitation with respect to reaching above shoulder level.[11]  Furthermore, with respect to Plaintiff's inability to bend, stoop, squat, and crouch, the DOT corroborates the VE's testimony by indicating that climbing, stooping, kneeling, and crouching are all "Not Present" for the electronics worker job.[12]  There is no inconsistency, then, between Plaintiff's limitations, the DOT's descriptions, and the VE's testimony.

**Optical Goods Worker: DOT 713.687-018**

Plaintiff also argues, at least implicitly, that given his limitations he cannot work as an optical goods worker.  (*See* Doc. 10, Pl.'s Mem. 14 ("The significant evidence in the record establishes that the Plaintiff is unable to perform even sedentary employment, and is therefore disabled.").)  The DOT describes the optical goods worker job as follows: "Attaches nose pads and temple pieces to optical frames, using handtools.  Positions parts in fixture to align screw holes. Inserts and tightens screws, using screwdriver."  DOT 713.687-018, 1991 WL 679271.  As with the electronics worker job, the optical goods worker job does

---

[11]     Occasional in this context is, again, up to one third of the time.  *Id.*; *see supra* note 3.

[12]     The DOT notes that "Not Present" means "Activity or condition does not exist."

not require Plaintiff to climb, balance, stoop, kneel, crouch, or crawl.  This is in line with Plaintiff's limitations in these areas.

Optical goods workers must frequently reach, however.[13]  Plaintiff's specific limitation is occasionally reaching above shoulder level.  The DOT description reveals that the type of reaching frequently involved is not necessarily always or persistently above shoulder level, but may include reaching at or lower than shoulder level, the type of reaching for which Plaintiff is not significantly limited.  *See Wheeler*, 224 F.3d at 897 ("DOT definitions are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range . . . . The DOT itself cautions that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities . . . . In other words, not all of the jobs in every category have requirements identical to or as rigorous as those listed in the DOT.") (quotations and citations omitted).  Therefore, the Court concludes that there is no inconsistency between the VE's testimony regarding the optical goods worker position in Plaintiff's case and the DOT.

Because there are no inconsistencies between the VE's testimony regarding the two proffered sedentary positions and the DOT, the ALJ properly relied on such testimony as substantial evidence supporting its finding of "not disabled."

---

[13]     Frequently in this context is from one third to two thirds of the time.  *Id.*

## CONCLUSION

Based on the foregoing, and all the files, records, and submissions herein,

**IT IS HEREBY ORDERED** that:

1.      Plaintiff's Motion for Summary Judgment (Doc. No. 9), is **DENIED**;

2.      Defendant's Motion for Summary Judgment (Doc. No. 15), is

**GRANTED**; and

3.      This case is dismissed.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Date: February 13, 2012          __*s/ Jeffrey J. Keyes*_____
                                 JEFFREY J. KEYES
                                 United States Magistrate Judge